**IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

|  |  |
|---|---|
| GLOBALFOUNDRIES U.S. INC.<br><br>*Plaintiff,*<br><br>v.<br><br>TOWER SEMICONDUCTOR LTD., TOWER PARTNERS SEMICONDUCTOR CO. LTD., TOWER SEMICONDUCTOR ITALY S.R.L., TOWER US HOLDINGS INC., TOWER SEMICONDUCTOR NPB HOLDINGS INC., TOWER SEMICONDUCTOR NEWPORT BEACH INC., AND TOWER SEMICONDUCTOR SAN ANTONIO INC.<br><br>*Defendants*. | **Case No.**  7:26-cv-00109<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff GlobalFoundries U.S. Inc. ("GlobalFoundries" or "Plaintiff") brings this patent infringement action against Defendants Tower Semiconductor Ltd. ("Tower Israel"), Tower Partners Semiconductor Co. Ltd. ("Tower Japan"), Tower Semiconductor Italy S.r.l. ("Tower Italy"), Tower US Holdings Inc. ("Tower US"), Tower Semiconductor NPB Holdings Inc. ("Tower NPB Holdings"), Tower Semiconductor Newport Beach Inc. ("Tower Newport Beach"), and Tower Semiconductor San Antonio Inc. ("Tower San Antonio") (collectively "Tower" or "Defendants").

**NATURE OF THE ACTION**

1.      This is a civil action for infringement of United States Patent Nos. 8,330,235 ("the '235 Patent"), 8,507,983 ("the '983 Patent"), 9,093,425 ("the '425 Patent"), 9,865,546 ("the '546

Patent"), 10,062,748 ("the '748 Patent"), and 10,707,167 ("the '167 Patent") (collectively, "the Asserted Patents") under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

2.      GlobalFoundries has also brought suit against Tower in the United States International Trade Commission, asserting the same patents at issue here.

3.      To address Tower's widespread infringement of GlobalFoundries' patents, GlobalFoundries has also brought another suit against Tower in the Western District of Texas asserting U.S. Patent Nos. 11,476,244; 8,283,193; 11,658,177; 7,566,653; and 9,269,666. Those patents are distinct from, and unrelated to, the Asserted Patents here.

## FACTUAL BACKGROUND

4.      GlobalFoundries is a leading American semiconductor manufacturer, a trusted supplier to the U.S. Department of Defense[1] and a major recipient of federal investment under the CHIPS and Science Act.[2] GlobalFoundries brings this action against Tower for infringement of GlobalFoundries' patents relating to its industry-leading RF and power management manufacturing process technologies. For over a decade, Tower has engaged in a systematic strategy of freeloading, spending very little on capacity expansion and even less on R&D. Instead, it profits by free riding on the patented innovation of others, like GlobalFoundries.

5.      Semiconductor manufacturing today requires some of the most expensive and sophisticated factories on the planet, utilizing highly technical and complex nano-scale process technologies and costly manufacturing tools. Entire global industries, such as the healthcare, artificial intelligence, automotive, and defense industries, depend on the availability and technological capability of the semiconductor products these factories and tools produce.

---

[1] https://gf.com/markets/aerospace-and-defense/.
[2] https://gf.com/gf-press-release/globalfoundries-and-u-s-department-of-commerce-announce-award-agreement-on-chips-act-funding-for-essential-chip-manufacturing/.

6.      GlobalFoundries is the most advanced pure-play foundry in the U.S. and Europe, and employs thousands of people in the U.S. and worldwide. While other companies were abandoning semiconductor manufacturing in the U.S., GlobalFoundries bucked this trend by investing billions of dollars on advanced technology and research in the United States. GlobalFoundries originated from the semiconductor manufacturing arm of another leading U.S. semiconductor company, Advanced Micro Devices, in 2009, and expanded globally through acquisition and organic investment. A major $15 billion U.S. investment in its 300-acre facility known as Fab 8 in Malta, New York, is the leading-edge of GlobalFoundries' significant U.S. investments. GlobalFoundries broke ground for that state-of-the-art facility in 2009 and produces vanguard technology from that location for customers worldwide. Another major U.S. acquisition took place in 2015 when GlobalFoundries acquired IBM's microelectronic facilities and personnel in Burlington, Vermont, a facility that became known as Fab 9. GlobalFoundries acquired not just IBM's facilities and technologists, but also approximately 16,000 IBM patents and applications; decades of experience and expertise in semiconductor development, device expertise, design, and manufacturing; and an expanded manufacturing footprint. The acquisition cemented GlobalFoundries' position as a global leader in world-class semiconductor manufacturing and advanced process technologies.[3]

7.      GlobalFoundries employs over 4,500 American workers and has invested billions of dollars over decades in domestic semiconductor manufacturing, including advanced radio frequency (RF) and power management platform technologies critical to national security, aerospace, defense, and communications infrastructure. GlobalFoundries' foundational

---

[3] "GlobalFoundries Completes Acquisition of IBM Microelectronics Business," https://gf.com/gf-press-release/globalfoundries-completes-acquisition-ibm-microelectronics-business/.

technologies are steeped in IBM and AMD heritage, two storied American companies that, prior to GlobalFoundries, also spent billions in R&D on semiconductor manufacturing technology in the United States. Building on this technology foundation, GlobalFoundries has spent billions more on development (investing over $500m annually in R&D and technology enablement)[4] and employs thousands of engineers, to sustain its innovation leadership.

8.    Rather than investing at levels commensurate with the technological demands of advanced RF integration, Tower profits by offering products that rely on innovations protected by GlobalFoundries' patents.

## THE PARTIES

9.    Plaintiff GlobalFoundries is a Delaware corporation with its principal place of business at 400 Stonebreak Road Ext., Malta, NY 12020.

10.    On information and belief, Defendant Tower Israel is an Israeli corporation headquartered at Ramat Gavriel Industrial Park, 20 Shaul Amor Avenue, P.O. Box 619, Migdal Haemek 2310502, Israel. On information and belief, Tower Israel may be served with process through its registered agent, Tower Semiconductor USA, Inc., located at 2570 North First Street, Suite 480 San Jose, CA 95131.

11.    On information and belief, Defendant Tower Japan is a Japanese company headquartered at 800 Higashiyama, Uozu-city, Toyama 937-8585, Japan.

12.    On information and belief, Defendant Tower Italy is an Italian company with a registered office at Via Marco De Marchi 720121, Milan, Italy, and conducts manufacturing operations at Via Camillo Olivetti 2, Agrate Brianza, Italy.

---

[4] https://www.globenewswire.com/news-release/2026/02/11/3236123/0/en/GlobalFoundries-Reports-Fourth-Quarter-2025-and-Fiscal-Year-2025-Financial-Results.html.

13.     On information and belief, Defendant Tower US is a holding company organized under the laws of the State of Delaware, with its principal place of business at 4321 Jamboree Road, Newport Beach, California 92660. On information and belief, Tower US may be served with process through its registered agent, The Corporation Trust Company, located at 1209 Orange Street, Wilmington, DE 19801.

14.     On information and belief, Defendant Tower NPB Holdings is a holding company organized under the laws of the State of Delaware, with its principal place of business at 4321 Jamboree Road, Newport Beach, California 92660. On information and belief, Tower NPB Holdings may be served with process through its registered agent, VCORP Services LLC, located at 108 W. 13th Street Suite 100, Wilmington, DE 19801.

15.     On information and belief, Defendant Tower Newport Beach is a holding company organized under the laws of the State of Delaware, with its principal place of business at 4321 Jamboree Road, Newport Beach, California 92660. On information and belief, Tower Newport Beach may be served with process through its registered agent, The Corporation Trust Company, located at 1209 Orange Street, Wilmington, DE 19801.

16.     On information and belief, Defendant Tower San Antonio is a Delaware corporation and a wholly-owned subsidiary of Tower US, with its principal place of business at 9651 Westover Hills Boulevard, San Antonio, Texas 78251. On information and belief, Tower San Antonio may be served with process through its registered agent, The Corporation Trust Company, located at 1209 Orange Street, Wilmington, DE 19801.

17.     Defendants are corporate affiliates under common ultimate ownership that collectively design, manufacture, import, distribute, and/or sell the products accused of infringement herein. On information and belief, Defendants operate as a single, integrated

5

enterprise sharing common branding, management, and financial reporting, including filing a single consolidated financial statement with the U.S. Securities and Exchange Commission. On information and belief, Defendants, acting in concert with one another, have placed the Accused Products into the stream of commerce with the knowledge and expectation that those products would be sold throughout the United States, including in the State of Texas and this District, and should reasonably have anticipated being brought into court in this District.

18.    On information and belief, Tower Italy, Tower US, Tower San Antonio, Tower NPB Holdings, and Tower Newport Beach are wholly-owned subsidiaries of Tower Israel. On information and belief, Tower Japan is a 51% owned subsidiary of Tower Israel.

## JURISDICTION AND VENUE

19.    The Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1338(a) and the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

20.    The Court has personal jurisdiction over Tower because Tower has committed acts of infringement within this District giving rise to this action, has a regular and established place of business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over Tower would not offend traditional notions of fair play and substantial justice. This Court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long-Arm Statute. In addition, or in the alternative, this Court has personal jurisdiction over Tower Israel, Tower Italy, and Tower Japan pursuant to Federal Rule of Civil Procedure 4(k)(2), the federal long-arm statute because (1) GlobalFoundries' claims arise under federal law, specifically 35 U.S.C. §§ 1 *et seq*.; (2) Tower Israel, Tower Italy, and Tower Japan, as foreign corporations, are not subject to jurisdiction in any state's courts of general jurisdiction; and (3) exercising jurisdiction is consistent with the United States Constitution and laws.

21.    Tower, directly and through its subsidiaries and holdings, acts in and directs activities within this forum, including by owning and directing Tower San Antonio's Fab 9 semiconductor manufacturing facility located in San Antonio, Texas, within this District. On information and belief, Tower Israel, as the ultimate parent company of all Defendants, directs, controls, and benefits from the infringing activities of its subsidiaries, including Tower San Antonio, Tower Japan, Tower Italy, Tower NPB Holdings, Tower Newport Beach, and Tower US. Tower Israel and its subsidiaries act in concert to place the Accused Products into the stream of commerce with the knowledge and expectation that those products will be offered for sale and sold in the United States generally, and in Texas and this District specifically.

22.    Tower, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout the United States generally, and in Texas and in the Western District of Texas specifically, by manufacturing, shipping, distributing, offering for sale, selling, and advertising its products and/or services, regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in Texas.

23.    Tower commits acts of infringement of the Asserted Patents in this District by, among other things, supplying, distributing, developing, making, using, offering to sell, and selling semiconductor devices manufactured by Tower using its 180nm–65nm processes, including wafers and chips, products containing these semiconductor devices, and components thereof manufactured using Tower's BCD processes (including TS18SOI), SiGe and BiCMOS processes (including SBC18 process), and RF processes ("Accused Products").

24.    On information and belief, Tower has purposefully directed its activities at residents of the United States and of this District, and the infringing activities alleged herein arise

out of and relate to Tower's activities in this forum. Tower manufactures, imports, sells for importation, and/or sells within the United States, after importation, semiconductor devices that can be and are incorporated into products including, but not limited to, the Tower-manufactured Qorvo PAC22140, the DENSO DNSRR004, and the Qorvo QM81026. On information and belief, Tower delivers its semiconductor devices into the stream of commerce with the expectation and knowledge that those devices will be incorporated into downstream products and that those downstream products, (*e.g.*, the Tower-manufactured Qorvo PAC22140, DENSO DNSRR004, and Qorvo QM81026), will be offered for sale and sold in the United States generally, and in Texas and this District specifically.

25.     On information and belief, the Accused Products are incorporated into products that are sold to customers with substantial operations in Texas, including Qorvo, Inc., which has facilities and a significant presence in Richardson, Texas at 500 W. Renner Road and 1201 East Campbell Road, and to downstream customers whose products are sold and used in Texas, including through Toyota's manufacturing facilities in Texas. For example, on information and belief, Toyota's manufacturing facilities in Texas incorporate and/or sell products containing the Accused Products within this District. By knowingly placing its products into the stream of commerce with the expectation and knowledge that they will reach this District, Tower has purposefully availed itself of the privileges of conducting business in the United States, Texas, and this District, and has sought the protection and benefits of the laws of the United States and Texas, thus subjecting itself to personal jurisdiction here.

26.     Tower manufactures Accused Products in its Fab ("Tower Fab 9") located in this District, which, on information and belief, employs at least 500 people. On information and belief, Tower San Antonio, acting in concert with Tower Israel and the other Defendants, manufactures

Accused Products at Tower Fab 9 and places those products into the stream of commerce with the expectation and knowledge that they will be incorporated into downstream products and sold throughout the United States, including in Texas and this District. The infringing activities alleged herein arise out of and relate to Tower San Antonio's business operations at Tower Fab 9 in this District.

27.     The Qorvo PAC22140 incorporates Accused Products manufactured using Tower's BCD processes such as its TS18SOI process in Tower facilities, including in San Antonio, Israel, and Japan. For example, in 2018, Tower announced that it will be producing Qorvo's PAC-series battery management, power management, and other power chips:  "the ramp to production of active-semi®'s [5] high-voltage integrated motor controller and driver PAC5232, [6] using TowerJazz's [(Tower Japan's)] 200V power SOI technology (TS18SOI), addressing the emerging markets of battery-operated power and garden tools." https://towersemi.com/2018/03/19/0319/. Tower's BCD processes are offered through Tower Fab 9 in this judicial district, working together with its fabs in Israel and Japan. https://towersemi.com/2018/08/02/082017_events/ ("TowerJazz showcased the expansion of our advanced power technology for low voltage and high voltage automotive applications: TS18PM technology up to 60V addresses low voltage up to 48V applications and TS18SOI technology addresses high voltage up to 200V automotive applications. TowerJazz's 0.18μm [180nm] BCD and SOI power technology is qualified in our Tonami, Japan fab, providing our customers with two sites and over 30 years of automotive IC manufacturing experience. The TowerJazz team has introduced the San Antonio fab as well for a broad range of applications using our 0.18μm BCD technology."); https://ir.towersemi.com/node/16066/html at

---

[5] In 2019, Qorvo announced it was acquiring Active-Semi.
https://www.qorvo.com/newsroom/news/2019/qorvo-to-acquire-active-semi-international.
[6] Part of the same Qorvo Power Application Controller ("PAC") family of products.

21 ("Tower [San Antonio] Fab 9 supports process geometries ranging from 0.80-micron to 0.18-micron using CMOS, power management[7] and analog based technologies."); *id.* ("TPSCo [Tower Japan] focuses on 65nm and 180nm geometries for RF, power management and CMOS image sensor wafers, products and applications."); *id.* at 37 ("Tower [San Antonio] Fab 9 supports process geometries ranging from 0.18 micron to 0.8 micron for the processing of products using CMOS and analog based technologies."); https://towersemi.com/wp-content/uploads/2025/12/MPW-Schedule_External_12_09_2025-1_AC-1.pdf (confirming as of December 9, 2025, that Fab 5 in Japan, implements Tower's 0.18µm power management process); https://mayafiles.tase.co.il/rpdf/1580001-1581000/P1580368-00.pdf at 48 (confirming as of March 19, 2024, that Tower Israel, Tower San Antonio, and Tower Japan implement Tower's 0.18µm Power processes). Published industry reports state that Tower's devices in the Qorvo PAC22140 are fabricated at Tower Fab 9 in San Antonio Fab.

28.    The Accused Products manufactured by Tower are incorporated into the Qorvo PAC22140 and then incorporated into products including battery-operated power and garden tools that are sold and used throughout the United States, including this District. The Qorvo PAC22140 itself is also commercially available for purchase online and in this District, including on Qorvo's website and through Mouser Electronics. https://store.qorvo.com/products/detail/pac22140-qorvo/713586/; https://www.mouser.com/ProductDetail/Qorvo/PAC22140-T?qs=Jm2GQyTW%2FbhQEBOKVZBMlw%3D%3D.

29.    On information and belief, the DENSO DNSRR004 incorporates Accused Products that are manufactured using Tower's SiGe and BiCMOS processes (including SBC18), which is implemented by at least Tower San Antonio, Tower NPB Holdings, and Tower Newport Beach.

---

[7] On information and belief, the TS18SOI process is a 0.18 micron Power Management process.

For example, Tower announced that "its 0.18µm [180nm] advanced SiGe technology was used to develop a 24-GHz rear and side radar sensor for DENSO Corporation" and that "DENSO chose TowerJazz's SBC18 process as this technology combines high-performance SiGe transistors for the transmission and reception of the radar signal together with 0.18µm CMOS for the integration of digital control functions on a single chip." https://towersemi.com/2017/08/14/0814-2/. Tower's accused 0.18 µm SiGe / BiCMOS process is used by at least Tower's Fabs in San Antonio and Newport Beach. https://towersemi.com/wp-content/uploads/2025/12/MPW-Schedule_External_12_09_2025-1_AC-1.pdf ("NPB – Fab 3" and "TSSA – Fab 9" using "SiGe BiCMOS 0.18µm" process); https://mayafiles.tase.co.il/rpdf/1580001-1581000/P1580368-00.pdf at 48 (showing Newport Beach and San Antonio Fabs using 0.18µm "SiGe" process). Further, industry reports state that the DENSO DNSRR004 is fabricated by Tower in the United States.

30.    On information and belief, Tower also uses, or intends to use, its accused SBC18 process in its Fabs in Japan and Israel. https://mayafiles.tase.co.il/rpdf/1580001-1581000/P1580368-00.pdf at 49; https://ir.towersemi.com/node/16066/html at 3.

31.    On information and belief, the Accused Products that are manufactured by Tower are incorporated into DENSO DNSRR004 then incorporated into Toyota side mirror radar sensors, which are manufactured and sold at and through Toyota's manufacturing facilities in Texas. https://towersemi.com/technology/automotive/rf-high-performance-analog/ (Tower's website confirming that "Tower Semiconductor today manufactures sensors for Denso deployed in the North America Toyota Camry"); https://towersemi.com/2017/08/14/0814-2/ (Denso's "sensor, using TowerJazz's submillimeter-wave technology, is used in the Toyota Camry that was released in North America in July and it will help enhance the vehicle safety system."); *see also* https://autoparts.jimcolemantoyota.com/products/product/sensor-blind-spot-monitor-881620r031

(Toyota Blind Spot Monitor Sensor is "an essential electrical part located within the Switch & Relay & Computer system of a Toyota vehicle."). Further, the Toyota Blind Spot Monitor includes a marking for a DENSO part, identified as Model No. DNSRR004, shown below.



Further, the Toyota Blind Spot Monitor includes a die marked as M7DN25TRX (shown below) that, on information and belief, is representative of products manufactured using at least Tower's SBC18 process.



32.    On information and belief, the Qorvo QM81026 Accused Products are manufactured using Tower's 65nm RF process in Tower facilities, including in Italy and Japan. https://mayafiles.tase.co.il/rpdf/1580001-1581000/P1580368-00.pdf at 36, 48. Tower's 65nm RF process is run on both bulk silicon substrates as well as SOI substrates. Tower's RF processes are manufactured at "0.18 micron, 0.13 micron and 65 nanometer lithography nodes" that Tower asserts are "integral to state-of-the-art products, such as modern smartphones" (https://ir.towersemi.com/node/16066/html at 26). For example, industry reports have confirmed the Qorvo QM81026 is incorporated into popular smartphones sold throughout the United States, including in this District.

33.    On information and belief, Tower manufactures the Accused Products for the Qorvo QM81026 (shown below) for use in smartphones available throughout the United States, including in this judicial district.



34.    Tower-manufactured RF products include similar structures. *See, e.g.,* https://towersemi.com/2025/07/30/07302025/ ("Wisol supplies RF front-end module (FEM) devices based on Tower's advanced 300mm RF SOI technology, produced at Tower's facilities in Uozu, Japan and Agrate, Italy.").

35.    On information and belief, Tower intended for, expected, knew, or should have known that the Accused Products would be incorporated into products that are sold in the United States, including in the Western District of Texas. For example, in its Securities and Exchange Commission filings, Tower represented that it "provide[s] design support and complementary technical services. Our customers and/or our customers' customers use our wafers in their end products, which are sold and/or used in diverse markets, including consumer applications, personal computers, communications, handsets and smartphones, automotive, industrial, aerospace and medical devices." https://ir.towersemi.com/node/16066/html at 20; *id.* at 25 ("Our emphasis on working closely with customers and accelerating the time-to-market and performance of their next-generation products has enabled us to maintain a high customer retention rate, while increasing the number of new customers and new products."); *id.* ("Our SiGe BiCMOS process technologies

14

offer more features than RF CMOS or standard BiCMOS processes and are well suited for advanced RF and high-performance analog semiconductors, such as … automotive radar components."); *id.* at 29 ("Our customers use our processes to design and market a broad range of analog and mixed-signal semiconductors for diverse end markets, including wired and wireless high-speed communications, consumer applications, automotive, medical, security, and industrial applications.").

36.    Tower confirmed it intends for, knows, or expects its processes to be used to manufacture "battery chargers" and "power management products," (https://ir.towersemi.com/node/16066/html at 26) which upon information and belief include the PAC22140 sold in the United States and this District. Tower confirmed it intends for, knows, or expects its processes to be used to manufacture smartphones, which on information and belief includes popular smartphones sold in the United States and in this District. https://ir.towersemi.com/node/16066/html at 26 ("We currently utilize RFSOI process technologies at 0.18 micron, 0.13 micron and 65 nanometer lithography nodes to fabricate various devices, including antenna switches with record figures of merit (FOM) and front-end modules, which are integral to state-of-the-art products, such as modern smartphones."). Tower confirmed it intends for, knows, or expects its processes to be used to manufacture automobile products sold in the United States, including in this District. https://towersemi.com/technology/automotive/rf-high-performance-analog/ (Tower's website confirming that "Tower Semiconductor today manufactures sensors for Denso deployed in the North America Toyota Camry"); https://towersemi.com/2017/08/14/0814-2/ ("This sensor, using TowerJazz's submillimeter-wave technology, is used in the Toyota Camry that was released in North America in July and it will help enhance the vehicle safety system."); https://ir.towersemi.com/static-files/02f82f47-8073-

4e96-9fd4-2e199bd60782 (Tower Q1 2024 Earnings Call, 5/9/2024) at 15 (Russell Ellwanger, Tower CEO: "We do radar, Silicon Germanium based radar that was with Denso, Toyota."); https://ir.towersemi.com/news-releases/news-release-details/towerjazz-achieves-iatf-16949-automotive-quality-certification/ (announcing Tower has "attained the latest Automotive Quality Certification, IATF 16949, the industry's highest standard of quality system for automotive suppliers.").

37.     On information and belief, Tower intended for, expected, knew, or should have known that the Accused Products would be sold in the United States and this District, or would be incorporated into products (*e.g.*, the Qorvo PAC22140, Denso DNSRR004, and the Qorvo QM81026) sold in the United States and this District, including battery-operated power and garden tools, automobiles, and smartphones.

38.     On information and belief, Defendants operate as a single, integrated enterprise for purposes of the infringing activities described herein. All Defendants share common Tower branding and operate under the direction and control of Tower Israel. Tower files a single consolidated financial statement with the U.S. Securities and Exchange Commission reflecting the combined operations of all Defendant entities. Tower's SEC filings further reflect that Tower cross-qualifies products across its manufacturing facilities and uses its Fabs interchangeably. For example, Tower's 2024 20-F states that products designated for manufacture at one facility may be manufactured at another facility, including San Antonio Fab 9, due to capacity constraints, further blurring the distinctions between corporate entities and demonstrating coordinated, unified operations directed at this forum. *See, e.g.*, https://ir.towersemi.com/node/16066/html at 36 ("The capacity in each of our facilities at any particular time varies based on the combination of the processes being used and the wafer mix being processed at such time. Therefore, capacity may be

16

significantly lower at certain times as a result of certain combinations that may require more processing steps than others. We have the ability to rapidly change the mix of processes in use in order to respond to changing customer needs and to maximize utilization of the fab. In general, capacity increases have been achieved through the addition of equipment, improvement in equipment utilization, and the reconfiguration and expansion of existing clean room areas."); *id.* at 37 (discussing "cross qualification of process technologies" between Tower's fabs).

39.     The integration between the Newport Beach and San Antonio operations is further confirmed by Tower's IATF 16949 quality management system ("QMS") certificates. For example, the IATF 16949 certificate for Tower Newport Beach expressly lists Tower San Antonio as a "Remote Support Site" for Human Resources functions. *See* https://towersemi.com/wp-content/uploads/2024/12/IATF-TS-534585-1224_AC.pdf at 3. The IATF 16949 certificate for Tower San Antonio lists Tower Newport Beach's address at 4321 Jamboree Road, Newport Beach, California 92660, as providing Customer Service, Human Resources, Information Technology, and Purchasing activities. *See* https://towersemi.com/wp-content/uploads/2024/10/54558Certificate-IATF16949-TSSA-201024_AC.pdf at 2. These bilateral certifications demonstrate that Tower Newport Beach and Tower San Antonio operate as a single, distributed operational system with shared functions spanning both sites. *See also* https://www.linkedin.com/jobs/view/customer-service-representative-at-tower-semiconductor-4373604985 (Tower job posting for a Customer Service Representative in Newport Beach, California, including periodic travel to San Antonio location); https://careers.towersemi.com/job-description/?job_id=9422 (Tower job posting (San Antonio location) for "global Industrial Engineering" team for "identifying bottlenecks in every Fab and driving OEE improvements to enhance productivity, cycle time, and on-time delivery to customers.");

17

https://careers.towersemi.com/job-description/?job_id=9409 (same job posting for Newport Beach location); https://careers.towersemi.com/job-description/?job_id=9407&lang=HE (Israel location).

40.    Furthermore, the Defendants share common leadership. For example, Russell C. Ellwanger, Chief Executive Officer and Director of Tower Israel, is the Chairman of the Board of Directors of each of the Defendant-subsidiaries.

### ITEM 6.  DIRECTORS, SENIOR MANAGEMENT AND EMPLOYEES

### A. DIRECTORS AND SENIOR MANAGEMENT

Set forth below is information regarding our senior management and directors as of April 15, 2025:

| Officer | Senior Management Name | Age | Title(s) |
|---|---|---|---|
| A | Russell C. Ellwanger | 70 | Chief Executive Officer and Director of Tower, and Chairman of the Board of Directors of its subsidiaries Tower Semiconductor USA, Inc., Tower US Holdings, Inc., Tower Semiconductor NPB Holdings, Inc., Tower Semiconductor Newport Beach, Inc., Tower Partners Semiconductor Co., Ltd., Tower Semiconductor San Antonio, Inc. and Tower Semiconductor Italy, S.r.l. |

https://ir.towersemi.com/node/16066/html at 47–48. Additionally, Rafi Mor, Tower Israel's Chief Operating Officer, serves as a board member of Tower San Antonio, Tower Newport Beach, Tower NPB Holdings, Tower Japan, and Tower Italy, and his prior management roles were tied to the Newport Beach operation before becoming COO. *Id.* at 49.

41.    On information and belief, Tower Israel controls the business strategy, supply chain, and significant transactions of all Defendant entities, and provides shared HR, IT, and legal support across all Defendant entities. On information and belief, Tower Israel established the U.S.-based Defendant entities, Tower US, Tower San Antonio, Tower NPB Holdings, and Tower Newport Beach, to manufacture and distribute Tower's products in the United States. By establishing these U.S.-based Defendant entities to act as its domestic manufacturing and distribution arm, Tower Israel has purposefully directed its activities at the United States market generally, and at Texas and this District specifically, and should reasonably have anticipated being brought into court here. Accordingly, on information and belief, Tower Israel and the other

Defendants, acting in concert, have placed the Accused Products into the stream of commerce with the knowledge and expectation that those products would be sold and used in the United States, Texas, and this District, and each Defendant's conduct in this regard is attributable to every other Defendant.

42. Tower itself refers to Tower Israel and its subsidiaries collectively as "Tower Semiconductor" on its webpage, marketing materials, and other public documents. According to its website, "Tower Semiconductor" collectively operates facilities around the world, including in San Antonio, Texas, within this District.[8] And Tower refers to "fabrication facilities" of "Tower Semiconductor" collectively when identifying its facilities—including in this District. [9] On information and belief, Tower Israel and its subsidiaries have therefore agreed to pursue a common purpose, share pecuniary interests, and have an equal right of control over the operations of "Tower Semiconductor."

43. With respect to Tower Israel (an Israeli company), Tower Italy (an Italian company), and Tower Japan (a Japanese company), venue is proper because foreign entities are proper in any judicial district. 28 U.S.C. § 1391(c)(3).

44. With respect to Tower San Antonio, venue is proper in this district under 28 U.S.C. § 1400(b) because Tower San Antonio has a regular and established place of business in this district and has committed acts of infringement in this district. Tower San Antonio has a permanent office located at 9651 Westover Hills Boulevard, San Antonio, Texas 78251, which is located within this district. Tower San Antonio also employs full-time personnel such as engineers in this district, including in San Antonio, Texas. On information and belief, Tower San Antonio's

---

[8] https://towersemi.com/about/corporate-overview/.
[9] https://towersemi.com/manufacturing/manufacturing-overview/.

business operations relating to the Accused Products are conducted primarily at its facilities located in San Antonio. Tower San Antonio has also committed acts of infringement in this district by commercializing, marketing, selling, manufacturing, and distributing the Accused Products.

45.    With respect to Tower US, Tower NPB Holdings, and Tower Newport Beach, venue is proper in this District pursuant to 28 U.S.C. §§ 1400(b), and 1391(b) and (c) because on information and belief, these Defendants have committed acts of infringement in this District, also because this is a District in which a substantial portion of the events giving rise to the claims occurred and in which GlobalFoundries' injuries were suffered, as set forth below. On information and belief, Tower US, Tower NPB Holdings, and Tower Newport Beach are alter egos of, or agents of, Tower San Antonio and Tower Israel, acting in concert with those entities to direct, control, and benefit from the infringing activities described herein, including by cross-qualifying products at Fab 9 in San Antonio, using Fab 9 in San Antonio as a regular and established place of business, and by exercising control over Tower San Antonio's operations within this District. *See, e.g.*, https://ir.towersemi.com/node/16066/html at 36 ("The capacity in each of our facilities at any particular time varies based on the combination of the processes being used and the wafer mix being processed at such time. Therefore, capacity may be significantly lower at certain times as a result of certain combinations that may require more processing steps than others. We have the ability to rapidly change the mix of processes in use in order to respond to changing customer needs and to maximize utilization of the fab. In general, capacity increases have been achieved through the addition of equipment, improvement in equipment utilization, and the reconfiguration and expansion of existing clean room areas."); *id.* at 37 (discussing "cross qualification of process technologies" between Tower's fabs). Accordingly, venue over these entities is proper in this District on the same basis as Tower San Antonio.

## THE ASSERTED PATENTS

46.     The '235 Patent is entitled "Method To Reduce MOL Damage On NiSi" and was issued on December 11, 2012. By assignment, GlobalFoundries owns the entire right, title, and interest in and to the '235 Patent, a copy of which is attached to this Complaint as Exhibit 1.

47.     The asserted claims of the '235 Patent are valid, enforceable, and currently in full force and effect. GlobalFoundries holds all rights, title, and interest in the '235 Patent with full rights to enforce the same including pursuing recovery of royalties for past and future damages for infringement.

48.     The written description of the '235 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

49.     GlobalFoundries has satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '235 Patent, and GlobalFoundries is entitled to damages for Tower's past infringement.

50.     The '983 Patent is entitled "High Voltage Device" and was issued on August 13, 2013. By assignment, GlobalFoundries owns the entire right, title, and interest in and to the '983 Patent, a copy of which is attached to this Complaint as Exhibit 2.

51.     The asserted claims of the '983 Patent are valid, enforceable, and currently in full force and effect. GlobalFoundries holds all rights, title, and interest in the '983 Patent with full rights to enforce the same including pursuing recovery of royalties for past and future damages for infringement.

52.     The written description of the '983 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how

21

the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

53.    GlobalFoundries has satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '983 Patent, and GlobalFoundries is entitled to damages for Tower's past infringement.

54.    The '425 Patent is entitled "Self-Aligned Liner Formed on Metal Semiconductor Alloy Contacts" and was issued on July 28, 2015. By assignment, GlobalFoundries owns the entire right, title, and interest in and to the '425 Patent, a copy of which is attached to this Complaint as Exhibit 3.

55.    The asserted claims of the '425 Patent are valid, enforceable, and currently in full force and effect. GlobalFoundries holds all rights, title, and interest in the '425 Patent with full rights to enforce the same including pursuing recovery of royalties for past and future damages for infringement.

56.    The written description of the '425 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

57.    GlobalFoundries has satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '425 Patent, and GlobalFoundries is entitled to damages for Tower's past infringement.

58.    The '546 Patent is entitled "Contacts To Semiconductor Substrate And Methods Of Forming Same" and was issued on January 9, 2018. By assignment, GlobalFoundries owns the

22

entire right, title, and interest in and to the '546 Patent, a copy of which is attached to this Complaint as Exhibit 4.

59.    The asserted claims of the '546 Patent are valid, enforceable, and currently in full force and effect. GlobalFoundries holds all rights, title, and interest in the '546 Patent with full rights to enforce the same including pursuing recovery of royalties for past and future damages for infringement.

60.    The written description of the '546 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

61.    The '748 Patent is entitled "Segmented Guard-Ring and Chip Edge Seals" and was issued on August 28, 2018. By assignment, GlobalFoundries owns the entire right, title, and interest in and to the '748 Patent, a copy of which is attached to this Complaint as Exhibit 5.

62.    The asserted claims of the '748 Patent are valid, enforceable, and currently in full force and effect. GlobalFoundries holds all rights, title, and interest in the '748 Patent with full rights to enforce the same including pursuing recovery of royalties for past and future damages for infringement.

63.    The written description of the '748 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

64. GlobalFoundries has satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '748 Patent, and GlobalFoundries is entitled to damages for Tower's past infringement.

65. The '167 Patent is entitled "Contacts To Semiconductor Substrate And Methods Of Forming Same" and was issued on July 7, 2020. By assignment, GlobalFoundries owns the entire right, title, and interest in and to the '167 Patent, a copy of which is attached to this Complaint as Exhibit 6.

66. The asserted claims of the '167 Patent are valid, enforceable, and currently in full force and effect. GlobalFoundries holds all rights, title, and interest in the '167 Patent with full rights to enforce the same including pursuing recovery of royalties for past and future damages for infringement.

67. The written description of the '167 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

68. GlobalFoundries has satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '167 Patent, and GlobalFoundries is entitled to damages for Tower's past infringement.

## CLAIMS FOR PATENT INFRINGEMENT

69. The allegations provided below are exemplary and without prejudice to GlobalFoundries' infringement contentions. In providing these allegations, GlobalFoundries does not convey or imply any particular claim constructions or the precise scope of the claims. GlobalFoundries' claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

70.    As detailed below, each element of at least one claim of each Asserted Patent is literally present in the Accused Products, or is literally practiced by the process through which each of the Accused Products is made. To the extent that any element is not literally present or practiced, each such element is present or practiced under the doctrine of equivalents.

**COUNT I**
**Infringement of the '235 Patent**

71.    GlobalFoundries realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

72.    On information and belief, Tower has directly infringed and continues to infringe one or more claims of the '235 Patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States, and/or making, using, selling, and/or offering to sell in the United States without authority or license, semiconductor devices manufactured by Tower's RF processes (including its 65nm RF process) (collectively, the "'235 Accused Products"), in violation of 35 U.S.C. § 271.

73.    On information and belief, Tower sells for importation, and/or sells and distributes within the United States, after importation, the '235 Accused Products that can be and are incorporated into products including, but not limited to the Qorvo QM81026 chip and QM81032 chip incorporated into smartphones sold in the United States, including in this District.

74.    The '235 Accused Products meet all the limitations of at least claim 1 of the '235 Patent. Specifically, the following description of the '235 Accused Products shows how they infringe at least claim 1 of the '235 Patent, which GlobalFoundries provides without the benefit of information about the Accused Products obtained through discovery.

75.    GlobalFoundries contends that each element of at least claim 1 is literally present in the '235 Accused Products. If, as a result of the Court's constructions or other determinations,

25

one or more claim elements is not literally present, GlobalFoundries contends that each such element is present under the doctrine of equivalents.

76.    Specifically, claim 1 of the '235 Patent recites "[a] semiconductor device comprising [] a silicon substrate." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include a semiconductor device with a silicon substrate.



77.    Claim 1 of the '235 Patent recites "a transistor, comprising source/drain regions and a gate electrode, on the substrate." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include a transistor, comprising source/drain regions and a gate electrode, on the substrate.

26



78.    Claim 1 of the '235 Patent recites "a nickel silicide layer on the gate electrode and source/drain regions." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include a nickel silicide layer on the gate electrode and source/drain regions.



79.    Claim 1 of the '235 Patent recites "wherein the nickel silicide layer comprises platinum having a composition gradient, from a nickel silicide surface at a silicon interface to an

opposite surface of the nickel silicide, with platinum increasing in amount in a direction away from the source/drain regions and the gate electrode, from between about 8 wt. % and about 12 wt. % at the silicon interface." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include platinum having a composition gradient, from a nickel silicide surface at a silicon interface to an opposite surface of the nickel silicide, with platinum increasing in amount in a direction away from the source/drain regions and the gate electrode, from between about 8 wt. % and about 12 wt. % at the silicon interface. The material analysis charts correspond to the weight percentages of the elements shown in the reverse engineering images, with the green arrow (pointing from bottom to top) corresponding to the green arrow (pointing from right to left at the top) in the respective material analysis charts.




 

80.    Defendants have knowledge of the '235 Patent, and their infringement thereof, through at least the filing and service of this complaint. Defendants' infringement is willful, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284.

81.    Defendants, in violation of 35 U.S.C. § 271(b), have also indirectly infringed and are indirectly infringing at least claim 1 of the '235 Patent by inducing third parties to sell, promote, offer to sell, make, use, and/or import the '235 Accused Products in the United States, and particularly in Texas. Through distribution and/or sales agreements with third-party distributors and customers, Tower is doing so with actual or constructive knowledge of the '235 Patent, knows or should know that the acts of the third-party customers and/or distributors will result in infringement of the '235 Patent, and has specific and actual intent to cause the third-party customers and/or distributors to infringe the '235 Patent.

82.    On information and belief, Defendants, in violation of 35 U.S.C. § 271(b), actively instruct, encourage, and/or aid such infringement through various acts, including instructing and training its distributors and customers to use one or more of the '235 Accused Products in a manner covered by at least claim 1 of the '235 Patent.

83.    As merely one example, on information and belief, Tower sells semiconductor devices using its RF processes to customers, including Qorvo, for importation into the U.S. For

example, "[t]he end-product of [Tower's] process is a silicon wafer containing multiple identical ICs. In most cases, [Tower's] customers assume responsibility for dicing, assembling, packaging and testing." https://towersemi.com/about/corporate-social-responsibility-esg/corporate-sustainability-report/.

84.     On information and belief, Defendants have been, and currently are, contributorily infringing the '235 Patent, in violation of 35 U.S.C. § 271(c), by selling/leasing or offering to sell/lease, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the '235 Patent, are known by Defendants to be especially made or especially adapted for use in infringement of the '235 Patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the '235 Accused Products. Defendants' actions contribute to the direct infringement of the '235 Patent by others, including customers of the Accused Products, in violation of 35 U.S.C. § 271(c).

85.     GlobalFoundries has suffered and continues to suffer damages as a result of Defendants' infringement of the '235 Patent.

86.     Defendants' continuing acts of infringement are a basis of consumer demand for the '235 Accused Products. Defendants' continuing acts of infringement are therefore irreparably harming and causing damage to GlobalFoundries, for which GlobalFoundries has no adequate remedy at law, and GlobalFoundries will continue to suffer such irreparable injury unless Defendants' continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by GlobalFoundries should an injunction not issue. The public interest would be served by issuance of an injunction.

**COUNT II**
**Infringement of the '983 Patent**

87.    GlobalFoundries realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

88.    On information and belief, Tower has directly infringed and continues to infringe one or more claims of the '983 Patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States, and/or making, using, selling, and/or offering to sell in the United States without authority or license, semiconductor devices manufactured by Tower's BCD processes (such as its TS18SOI processes), including wafers and chips, products containing these semiconductor devices, and components thereof (collectively, the "'983 Accused Products"), in violation of 35 U.S.C. § 271.

89.    On information and belief, Tower sells for importation, and/or sells and distributes within the United States, after importation, the '983 Accused Products that can be and are incorporated into products including, but not limited to, the PA22BZ die in the Qorvo PAC22140.

90.    On information and belief, Tower sells, offers to sell, and imports the '983 Accused Products in the United States, including to its partners (*e.g.*, Qorvo), who also sell, offer to sell, and import the '983 Accused Products in the United States (*e.g.*, https://www.qorvo.com/products/p/PAC22140; https://towersemi.com/technology/power-management/180nm-power-management/).

91.    The '983 Accused Products meet all the limitations of at least claim 1 of the '983 Patent. Specifically, the following description of the '983 Accused Products shows how they infringe at least claim 1 of the '983 Patent, which GlobalFoundries provides without the benefit of information about the Accused Products obtained through discovery.

31

92.     GlobalFoundries contends that each element of at least claim 1 is literally present in the '983 Accused Products. If, as a result of the Court's constructions or other determinations, one or more claim elements is not literally present, GlobalFoundries contends that each such element is present under the doctrine of equivalents.

93.     Specifically, claim 1 of the '983 Patent recites "[a] device." As shown in the exemplary analysis below, to the extent the preamble is limiting, devices manufactured using Tower's BCD processes include a device.





94.     Claim 1 of the '983 Patent recites "a substrate prepared with an active device region, wherein the active device region includes a gate, the gate including a gate electrode over a gate dielectric." As shown in the exemplary analysis below, devices manufactured using Tower's

BCD processes include a substrate prepared with an active device region, and the active device region includes a gate including a gate electrode over a gate dielectric.





95.    Claim 1 of the '983 Patent recites "a doped channel well disposed in the substrate adjacent to a first edge of the gate, the first edge of the gate overlaps the channel well with a channel edge of the channel well beneath the gate, the first edge of the gate and channel edge beneath the gate define a channel of the device, wherein the channel is displaced from a first heavily doped region adjacent to the first edge of the gate." As shown in the exemplary analysis below, devices manufactured using Tower's BCD processes include a doped channel well that is

overlapped by a first edge of the gate to form a channel. Disposed in the substrate adjacent to the right edge of the gate, the right edge of the gate overlaps the channel well with a channel edge of the channel well beneath the gate, the left edge of the gate and channel edge beneath the gate define a channel of the device, and the channel is displaced from a heavily doped region adjacent to the left edge of the gate.



34





96.     Claim 1 of the '983 Patent recites "a doped drift well adjacent to a second edge of the gate." As shown in the exemplary analysis below, devices manufactured using Tower's BCD processes include a doped drift well adjacent to the right edge of the gate.

35



97.    Defendants have knowledge of the '983 Patent, and their infringement thereof, through at least the filing and service of this complaint. Defendants' infringement is willful, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284.

98.    Defendants, in violation of 35 U.S.C. § 271(b), have also indirectly infringed and are indirectly infringing at least claim 1 of the '983 Patent by inducing third parties to sell, promote, offer to sell, make, use, and/or import the '983 Accused Products in the United States, and particularly in Texas. Through distribution and/or sales agreements with third-party distributors and customers, Tower is doing so with actual or constructive knowledge of the '983 Patent, knows or should know that the acts of the third-party customers and/or distributors will result in infringement of the '983 Patent, and has specific and actual intent to cause the third-party customers and/or distributors to infringe the '983 Patent.

99.    On information and belief, Defendants, in violation of 35 U.S.C. § 271(b), actively instruct, encourage, and/or aid such infringement through various acts, including instructing and/or training its distributors and customers to use one or more of the '983 Accused Products in a manner covered by at least claim 1 of the '983 Patent.

100.    As merely one example, on information and belief, Tower sells semiconductor devices using its BCD processes such as TS18SOI process to customers, including Qorvo, for importation into the U.S. For example, "[t]he end-product of [Tower's] process is a silicon wafer

containing multiple identical ICs. In most cases, [Tower's] customers assume responsibility for dicing, assembling, packaging and testing." https://towersemi.com/about/corporate-social-responsibility-esg/corporate-sustainability-report/.

101.    On information and belief, Defendants have been, and currently are, contributorily infringing the '983 Patent, in violation of 35 U.S.C. § 271(c), by selling/leasing or offering to sell/lease, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the '983 Patent, are known by Defendants to be especially made or especially adapted for use in infringement of the '983 Patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the '983 Accused Products. Defendants' actions contribute to the direct infringement of the '983 Patent by others, including customers of the '983 Accused Products, in violation of 35 U.S.C. § 271(c).

102.    GlobalFoundries has suffered and continues to suffer damages as a result of Defendants' infringement of the '983 Patent.

103.    Defendants' continuing acts of infringement are a basis of consumer demand for the '983 Accused Products. Defendants' continuing acts of infringement are therefore irreparably harming and causing damage to GlobalFoundries, for which GlobalFoundries has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendants' continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by GlobalFoundries should an injunction not issue. The public interest would be served by issuance of an injunction.

**COUNT III**
**Infringement of the '425 Patent**

104.    GlobalFoundries realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

105.    On information and belief, Tower has directly infringed and continues to infringe one or more claims of the '425 Patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States, making, using, selling, and/or offering to sell in the United States without authority or license, semiconductor devices manufactured by Tower at its SiGe and BiCMOS processes (including its SBC18 process), as well as its RF processes (including its 65nm RF process), including wafers and chips, products containing these semiconductor devices, and components thereof (collectively, the "'425 Accused Products"), in violation of 35 U.S.C. § 271.

106.    On information and belief, Tower sells for importation, and/or sells and distributes within the United States, after importation, the '425 Accused Products that can be and are incorporated into products including, but not limited to, the M7DN25PS die in the DENSO DNSRR004 module, as well as the Qorvo QM81026 chip and QM81032 chip incorporated into smartphones sold in the United States, including in this District.

107.    On information and belief, Tower sells, offers to sell, and imports the '425 Accused Products in the United States, including to its partners (*e.g.*, Qorvo and Denso) who also offer to sell, sell, and import the '425 Accused Products in the United States (*e.g.*, https://towersemi.com/technology/process-technology-offerings/; https://autoparts.toyota.com/; https://www.qorvo.com; https://autoparts.jimcolemantoyota.com/products/product/sensor-blind-spot-monitor-881620r031).

108.    The '425 Accused Products meet all the limitations of at least claim 1 of the '425 Patent. Specifically, the following description of the '425 Accused Products shows how they infringe at least claim 1 of the '425 Patent, which GlobalFoundries provides without the benefit of information about the Accused Products obtained through discovery.

109.    GlobalFoundries contends that each element of at least claim 1 is literally present in the '425 Accused Products. If, as a result of the Court's constructions or other determinations, one or more claim elements is not literally present, GlobalFoundries contends that each such element is present under the doctrine of equivalents.

110.    Specifically, claim 1 of the '425 Patent recites "[a] semiconductor structure." As shown in the exemplary analysis below, devices manufactured using Tower's SiGe and BiCMOS processes include a semiconductor structure.





111.    Claim 1 of the '425 Patent recites "a semiconductor substrate having a source region and a drain region located within a semiconductor material portion of said semiconductor substrate, wherein said source region and said drain region are spaced apart by a channel region." As shown in the exemplary analysis below, devices manufactured using Tower's SiGe and BiCMOS processes include a semiconductor substrate having a source region and a drain region located within a semiconductor material portion of said semiconductor substrate, and the source region and the drain region are spaced apart by a channel region.



112.    Claim 1 of the '425 Patent recites "a functional gate structure located above said channel region." As shown in the exemplary analysis below, devices manufactured using Tower's SiGe and BiCMOS processes include a functional gate structure located above the channel region.

40



113.   Claim 1 of the '425 Patent recites "a source-side material stack of, from bottom to top, a source-side metal semiconductor alloy portion and a source-side transition-metal metal semiconductor alloy portion located on one side of said functional gate structure and located atop said source region." As shown in the exemplary analysis below, devices manufactured using Tower's SiGe and BiCMOS processes include a source-side material stack of, from bottom to top, a source-side metal semiconductor alloy portion and a source-side transition-metal metal semiconductor alloy portion located on one side of said functional gate structure and located atop said source region.







114.    Claim 1 of the '425 Patent recites "a drain-side material stack of, from bottom to top, a drain-side metal semiconductor alloy portion and a drain-side transition metal-metal semiconductor alloy portion located on another side of said functional gate structure and located atop said drain region." Devices manufactured using Tower's SiGe and BiCMOS processes include a drain-side material stack with the same composition as the source-side material stack.

115.    Devices manufactured using Tower's RF processes also infringe one or more claims of the '425 Patent. Specifically, claim 1 of the '425 Patent recites "[a] semiconductor structure." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes also include a semiconductor structure.



116.    Claim 1 of the '425 Patent recites "a semiconductor substrate having a source region and a drain region located within a semiconductor material portion of said semiconductor substrate, wherein said source region and said drain region are spaced apart by a channel region." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include a semiconductor substrate having a source region and a drain region located within a semiconductor material portion of said semiconductor substrate, and the source region and the drain region are spaced apart by a channel region.



117.    Claim 1 of the '425 Patent recites "a functional gate structure located above said channel region." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include a functional gate structure located above the channel region.



118.    Claim 1 of the '425 Patent recites "a source-side material stack of, from bottom to top, a source-side metal semiconductor alloy portion and a source-side transition-metal metal semiconductor alloy portion located on one side of said functional gate structure and located atop said source region." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include a source-side material stack of, from bottom to top, a source-side metal semiconductor alloy portion and a source-side transition-metal metal semiconductor alloy portion located on one side of the functional gate structure and located atop the source region.







119.    Claim 1 of the '425 Patent recites "a drain-side material stack of, from bottom to top, a drain-side metal semiconductor alloy portion and a drain-side transition metal-metal semiconductor alloy portion located on another side of said functional gate structure and located atop said drain region." Devices manufactured using Tower's RF processes include a drain-side material stack with the same composition as the source-side material stack.

120.    Defendants have knowledge of the '425 Patent, and their infringement thereof, through at least the filing and service of this complaint. Defendants' infringement is willful, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284.

121.    Defendants, in violation of 35 U.S.C. § 271(b), have also indirectly infringed and are indirectly infringing at least claim 1 of the '425 Patent by inducing third parties to sell, promote, offer to sell, make, use, and/or import the '425 Accused Products in the United States, and particularly in Texas. Through distribution and/or sales agreements with third-party distributors and customers, Tower is doing so with actual or constructive knowledge of the '425 Patent, knows or should know that the acts of the third-party customers and/or distributors will result in infringement of the '425 Patent, and has specific and actual intent to cause the third-party customers and/or distributors to infringe the '425 Patent.

122.    On information and belief, Defendants, in violation of 35 U.S.C. § 271(b), actively instruct, encourage, and/or aid such infringement through various acts, including instructing and training its distributors and customers to use one or more of the '425 Accused Products in a manner covered by at least claim 1 of the '425 Patent.

123.    On information and belief, Defendants have been, and currently are, contributorily infringing the '425 Patent, in violation of 35 U.S.C. § 271(c), by selling/leasing or offering to sell/lease, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the '425 Patent, are known by Defendants to be especially made or especially adapted for use in infringement of the '425 Patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the '425 Accused Products. Defendants' actions contribute to the direct infringement of the '425 Patent by others, including customers of the '425 Accused Products, in violation of 35 U.S.C. § 271(c).

124.    GlobalFoundries has suffered and continues to suffer damages as a result of Defendants' infringement of the '425 Patent.

125. Defendants' continuing acts of infringement are a basis of consumer demand for the '425 Accused Products. Defendants' continuing acts of infringement are therefore irreparably harming and causing damage to GlobalFoundries, for which GlobalFoundries has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendants' continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by GlobalFoundries should an injunction not issue. The public interest would be served by issuance of an injunction.

**COUNT IV**
**Infringement of the '546 Patent**

126. GlobalFoundries realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

127. On information and belief, Tower has directly infringed and continues to infringe one or more claims of the '546 Patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States, making, using, selling, and/or offering to sell in the United States without authority or license, semiconductor devices manufactured by Tower at its SiGe and BiCMOS processes (including its SBC18 process), as well as its RF processes (including its 65nm RF process), including wafers and chips, products containing these semiconductor devices, and components thereof (collectively, the "'546 Accused Products"), in violation of 35 U.S.C. § 271.

128. On information and belief, Tower sells for importation, and/or sells and distributes within the United States, after importation, the '546 Accused Products that can be and are incorporated into products including, but not limited to, the M7DN25PS die in the DENSO DNSRR004 module, as well as the Qorvo QM81026 chip and QM81032 chip incorporated into smartphones sold in the United States, including in this District.

129. On information and belief, Tower sells, offers to sell, and imports the '546 Accused Products in the United States, including to its partners (*e.g.*, Qorvo and Denso) who also offer to sell, sell, and import the '546 Accused Products in the United States (*e.g.*, https://towersemi.com/technology/process-technology-offerings/; https://autoparts.toyota.com/; https://www.qorvo.com; https://autoparts.jimcolemantoyota.com/products/product/sensor-blind-spot-monitor-881620r031).

130. The '546 Accused Products meet all the limitations of at least claim 1 of the '546 Patent. Specifically, the following description of the '546 Accused Products shows how they infringe at least claim 1 of the '546 Patent, which GlobalFoundries provides without the benefit of information about the Accused Products obtained through discovery.

131. GlobalFoundries contends that each element of at least claim 1 is literally present in the '546 Accused Products. If, as a result of the Court's constructions or other determinations, one or more claim elements is not literally present, GlobalFoundries contends that each such element is present under the doctrine of equivalents.

132. Specifically, claim 1 of the '546 Patent recites "[a] method for forming a contact in a dielectric layer to a semiconductor substrate." As shown in the exemplary analysis below, Tower's SiGe and BiCMOS processes include a method for forming a contact in a dielectric layer to a semiconductor substrate.



133.    Claim 1 of the '546 Patent recites "forming a contact opening in the dielectric layer over the semiconductor substrate to expose an upper portion of the semiconductor substrate." As shown in the exemplary analysis below, Tower's SiGe and BiCMOS processes include forming a contact opening in the dielectric layer over the semiconductor substrate to expose an upper portion of the semiconductor substrate.





134.    Claim 1 of the '546 Patent recites "depositing a first liner layer to conformally coat the contact opening." As shown in the exemplary analysis below, Tower's SiGe and BiCMOS processes include depositing a liner layer to conformally coat the contact opening.





135. Claim 1 of the '546 Patent recites "causing a portion of the first liner layer to diffuse into the upper portion of the semiconductor substrate to form a first intermix region at the upper portion of the semiconductor substrate." As shown in the exemplary analysis below, Tower's SiGe and BiCMOS processes include causing a portion of the liner layer to diffuse into the upper portion of the semiconductor substrate to form an intermix region at the upper portion of the semiconductor substrate.





136.    Claim 1 of the '546 Patent recites "depositing a refractory metal layer over the first intermix region." As shown in the exemplary analysis below, Tower's SiGe and BiCMOS processes include depositing a refractory metal layer over the intermix region.





137.    Claim 1 of the '546 Patent recites "depositing a metal in the contact opening thereby forming the contact." As shown in the exemplary analysis below, Tower's SiGe and BiCMOS processes include depositing a metal in the contact opening thereby forming the contact.





138.    Tower's RF processes also infringe one or more claims of the '546 Patent. Specifically, claim 1 of the '546 Patent recites "[a] method for forming a contact in a dielectric layer to a semiconductor substrate." As shown in the exemplary analysis below, Tower's RF processes include a method for forming a contact in a dielectric layer to a semiconductor substrate.



139.    Claim 1 of the '546 Patent recites "forming a contact opening in the dielectric layer over the semiconductor substrate to expose an upper portion of the semiconductor substrate." As shown in the exemplary analysis below, Tower's RF processes include forming a contact opening in the dielectric layer over the semiconductor substrate to expose an upper portion of the semiconductor substrate.



140.    Claim 1 of the '546 Patent recites "depositing a first liner layer to conformally coat the contact opening." As shown in the exemplary analysis below, Tower's RF processes include depositing a liner layer to conformally coat the contact opening.







141.    Claim 1 of the '546 Patent recites "causing a portion of the first liner layer to diffuse into the upper portion of the semiconductor substrate to form a first intermix region at the upper portion of the semiconductor substrate." As shown in the exemplary analysis below, Tower's RF processes include causing a portion of the liner layer to diffuse into the upper portion of the semiconductor substrate to form an intermix region at the upper portion of the semiconductor substrate.



142.    The arrow in the reverse engineering analysis below corresponds to the arrow at the top of the ensuing material analysis chart (*i.e.*, such that the upward direction in the reverse engineering analysis below corresponds to the right-to-left direction in the ensuing material analysis chart). As shown in the material analysis chart below, the intermix region created by the Tower RF Processes include causing a portion of the first liner layer to diffuse into the silicon substrate.



143.    Claim 1 of the '546 Patent recites "depositing a refractory metal layer over the first intermix region." As shown in the exemplary analysis below, Tower's RF processes include depositing a refractory metal layer over the intermix region.





144.    Claim 1 of the '546 Patent recites "depositing a metal in the contact opening thereby forming the contact." As shown in the exemplary analysis below, Tower's RF processes include depositing a metal in the contact opening thereby forming the contact.



145.    Defendants have knowledge of the '546 Patent, and their infringement thereof, through at least the filing and service of this complaint. Defendants' infringement is willful, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284.

146.    Defendants, in violation of 35 U.S.C. § 271(b), have also indirectly infringed and are indirectly infringing at least claim 1 of the '546 Patent by inducing third parties to sell, promote, offer to sell, make, use, and/or import the '546 Accused Products in the United States, and

particularly in Texas. Through distribution and/or sales agreements with third-party distributors and customers, Tower is doing so with actual or constructive knowledge of the '546 Patent, knows or should know that the acts of the third-party customers and/or distributors will result in infringement of the '546 Patent, and has specific and actual intent to cause the third-party customers and/or distributors to infringe the '546 Patent.

147.    On information and belief, Defendants, in violation of 35 U.S.C. § 271(b), actively instruct, encourage, and/or aid such infringement through various acts, including instructing and training its distributors and customers to use one or more of the '546 Accused Products in a manner covered by at least claim 1 of the '546 Patent.

148.    On information and belief, Defendants have been, and currently are, contributorily infringing the '546 Patent, in violation of 35 U.S.C. § 271(c), by selling/leasing or offering to sell/lease, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the '546 Patent, are known by Defendants to be especially made or especially adapted for use in infringement of the '546 Patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the '546 Accused Products. Defendants' actions contribute to the direct infringement of the '546 Patent by others, including customers of the '546 Accused Products, in violation of 35 U.S.C. § 271(c).

149.    GlobalFoundries has suffered and continues to suffer damages as a result of Defendants' infringement of the '546 Patent.

150.    Defendants' continuing acts of infringement are a basis of consumer demand for the '546 Accused Products. Defendants' continuing acts of infringement are therefore irreparably harming and causing damage to GlobalFoundries, for which GlobalFoundries has no adequate

remedy at law, and will continue to suffer such irreparable injury unless Defendants' continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by GlobalFoundries should an injunction not issue. The public interest would be served by issuance of an injunction.

**COUNT V**
**Infringement of the '748 Patent**

151.   GlobalFoundries realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

152.   On information and belief, Tower has directly infringed and continues to infringe one or more claims of the '748 Patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States, making, using, selling, and/or offering to sell in the United States without authority or license, semiconductor devices manufactured by Tower's BCD processes (such as its TS18SOI processes), including wafers and chips, products containing these semiconductor devices, and components thereof (collectively, the "'748 Accused Products"), in violation of 35 U.S.C. § 271.

153.   On information and belief, Tower sells for importation, and/or sells and distributes within the United States, after importation, the '748 Accused Products that can be and are incorporated into products including, but not limited to, the PA22BZ die in the Qorvo PAC22140.

154.   On information and belief, Tower sells, offers to sell, and imports the '748 Accused Products in the United States, including to its partners (*e.g.*, Qorvo), who also sell, offer to sell, and import the '748 Accused Products in the United States (*e.g.*, https://www.qorvo.com/products/p/PAC22140; https://towersemi.com/technology/power-management/180nm-power-management/).

61

155.    The '748 Accused Products meet all the limitations of at least claim 1 of the '748 Patent. Specifically, the following description of the '748 Accused Products shows how they infringe at least claim 1 of the '748 Patent, which GlobalFoundries provides without the benefit of information about the Accused Products obtained through discovery.

156.    GlobalFoundries contends that each element of at least claim 1 is literally present in the '748 Accused Products. If, as a result of the Court's constructions or other determinations, one or more claim elements is not literally present, GlobalFoundries contends that each such element is present under the doctrine of equivalents.

157.    Specifically, claim 1 of the '748 Patent recites "[a] structure." As shown in the exemplary analysis below, devices manufactured using Tower's BCD processes include a structure.





158.    Claim 1 of the '748 Patent recites "a guard ring structure formed in a low-k dielectric material." As shown in the exemplary analysis below, devices manufactured using Tower's BCD processes include a guard ring structure formed in a low-k dielectric material.







159.    Claim 1 of the '748 Patent recites "an edge seal structure formed through the low-k dielectric material to at least a substrate underneath the low-k dielectric material." As shown in

the exemplary analysis below, devices manufactured using Tower's BCD processes include an edge seal structure formed through the low-k dielectric material to at least a substrate underneath the low-k dielectric material.





160. Claim 1 of the '748 Patent recites "wherein the substrate is a silicon on insulator substrate and the edge seal structure terminates below the low-k dielectric material." As shown in

65

the exemplary analysis below, devices manufactured using Tower's BCD processes include the substrate being a silicon on insulator substrate and the edge seal structure terminates below the low-k dielectric material.







SU8100 10.0kV 8.3mm x5.00k SE(UL)          10.0µm

161. Defendants have knowledge of the '748 Patent, and their infringement thereof, through at least the filing and service of this complaint. Defendants' infringement is willful, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284.

162. Defendants, in violation of 35 U.S.C. § 271(b), have also indirectly infringed and are indirectly infringing at least claim 1 of the '748 Patent by inducing third parties to sell, promote, offer to sell, make, use, and/or import the '748 Accused Products in the United States, and particularly in Texas. Through distribution and/or sales agreements with third-party distributors and customers, Tower is doing so with actual or constructive knowledge of the '748 Patent, knows or should know that the acts of the third-party customers and/or distributors will result in infringement of the '748 Patent, and has specific and actual intent to cause the third-party customers and/or distributors to infringe the '748 Patent.

163. On information and belief, Defendants, in violation of 35 U.S.C. § 271(b), actively instruct, encourage, and/or aid such infringement through various acts, including instructing and/or training its distributors and customers to use one or more of the '748 Accused Products in a manner covered by at least claim 1 of the '748 Patent.

164.    As merely one example, on information and belief, Tower sells semiconductor devices using its BCD processes such as TS18SOI process to customers, including Qorvo, for importation into the U.S. For example, "[t]he end-product of [Tower's] process is a silicon wafer containing multiple identical ICs. In most cases, [Tower's] customers assume responsibility for dicing, assembling, packaging and testing." https://towersemi.com/about/corporate-social-responsibility-esg/corporate-sustainability-report/.

165.    On information and belief, Defendants have been, and currently are, contributorily infringing the '748 Patent, in violation of 35 U.S.C. § 271(c), by selling/leasing or offering to sell/lease, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the '748 Patent, are known by Defendants to be especially made or especially adapted for use in infringement of the '748 Patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the '748 Accused Products. Defendants' actions contribute to the direct infringement of the '748 Patent by others, including customers of the '748 Accused Products, in violation of 35 U.S.C. § 271(c).

166.    GlobalFoundries has suffered and continues to suffer damages as a result of Defendants' infringement of the '748 Patent.

167.    Defendants' continuing acts of infringement are a basis of consumer demand for the '748 Accused Products. Defendants' continuing acts of infringement are therefore irreparably harming and causing damage to GlobalFoundries, for which GlobalFoundries has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendants' continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are

less than those faced by GlobalFoundries should an injunction not issue. The public interest would be served by issuance of an injunction.

## COUNT VI
### Infringement of the '167 Patent

168.    GlobalFoundries realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

169.    On information and belief, Tower has directly infringed and continues to infringe one or more claims of the '167 Patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States, making, using, selling, and/or offering to sell in the United States without authority or license, semiconductor devices manufactured by Tower at its SiGe and BiCMOS processes (including its SBC18 process), as well as its RF processes (including its 65nm RF process), including wafers and chips, products containing these semiconductor devices, and components thereof (collectively, the "'167 Accused Products"), in violation of 35 U.S.C. § 271.

170.    On information and belief, Tower sells for importation, and/or sells and distributes within the United States, after importation, the '167 Accused Products that can be and are incorporated into products including, but not limited to, the M7DN25PS die in the DENSO DNSRR004 module, as well as the Qorvo QM81026 chip and QM81032 chip incorporated into smartphones sold in the United States, including in this District.

171.    On information and belief, Tower sells, offers to sell, and imports the '167 Accused Products in the United States, including to its partners (*e.g.*, Qorvo and Denso) who also offer to sell, sell, and import the '167 Accused Products in the United States (*e.g.*, https://towersemi.com/technology/process-technology-offerings/; https://autoparts.toyota.com/; https://www.qorvo.com; https://autoparts.jimcolemantoyota.com/products/product/sensor-blind-

spot-monitor-881620r031). The '167 Accused Products meet all the limitations of at least claim 1 of the '167 Patent. Specifically, the following description of the Accused Products shows how they infringe at least claim 1 of the '167 Patent, which GlobalFoundries provides without the benefit of information about the Accused Products obtained through discovery.

172.    GlobalFoundries contends that each element of at least claim 1 is literally present in the '167 Accused Products. If, as a result of the Court's constructions or other determinations, one or more claim elements is not literally present, GlobalFoundries contends that each such element is present under the doctrine of equivalents.

173.    Specifically, claim 1 of the '167 Patent recites "[a] semiconductor structure including a contact to a semiconductor substrate." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include semiconductor structure including a contact to a semiconductor substrate.



174.    Claim 1 of the '167 Patent recites "a contact opening in a dielectric layer over the semiconductor substrate." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include a contact opening in a dielectric layer over the semiconductor substrate.



175.    Claim 1 of the '167 Patent recites "a first liner layer substantially coating a sidewall of the contact opening." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include a liner layer substantially coating a sidewall of the contact opening.







176.    Claim 1 of the '167 Patent recites "a refractory metal layer substantially coating the first liner layer in the contact opening." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include a refractory metal layer substantially coating the liner layer in the contact opening.







177.    Claim 1 of the '167 Patent recites "a metal substantially filling the contact opening." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include a metal substantially filling the contact opening.



178.    Claim 1 of the '167 Patent recites "an intermix region at an upper surface of the semiconductor substrate in the contact opening, the intermix region having a composition including a material used in the first liner layer, a material used in the refractory metal layer, and a material used in the semiconductor substrate." As shown in the exemplary analysis below, devices manufactured using Tower's RF processes include an intermix region at an upper surface of the semiconductor substrate in the contact opening, the intermix region having a composition

including a material used in the liner layer, a material used in the refractory metal layer, and a

material used in the semiconductor substrate.



179.    Claim 1 of the '167 Patent recites "wherein the refractory metal layer includes a

multi-layer having at least a first refractory metal material and a second refractory metal material,

the first refractory metal material substantially separating the first liner layer and the second

refractory metal material, the second refractory metal material substantially separating the first

refractory metal material and the metal." As shown in the exemplary analysis immediately above,

the refractory metal layer in devices manufactured using Tower's RF processes includes a multi-

layer having at least two refractory metal materials, one refractory metal material substantially

separating the liner layer and the other refractory metal material, the other refractory metal material substantially separating the one refractory metal material and the metal.

180.    Tower's SiGe and BiCMOS processes also infringe one or more claims of the '167 Patent. Specifically, claim 1 of the '167 Patent recites "[a] semiconductor structure including a contact to a semiconductor substrate." As shown in the exemplary analysis below, devices manufactured using Tower's SiGe and BiCMOS processes include semiconductor structure including a contact to a semiconductor substrate.



181.    Claim 1 of the '167 Patent recites "a contact opening in a dielectric layer over the semiconductor substrate." As shown in the exemplary analysis below, devices manufactured using Tower's SiGe and BiCMOS processes include a contact opening in a dielectric layer over the semiconductor substrate.

74





182.　　Claim 1 of the '167 Patent recites "a first liner layer substantially coating a sidewall of the contact opening." As shown in the exemplary analysis below, devices manufactured using Tower's SiGe and BiCMOS processes include a liner layer substantially coating a sidewall of the contact opening.





183.   Claim 1 of the '167 Patent recites "a refractory metal layer substantially coating the first liner layer in the contact opening." As shown in the exemplary analysis immediately above, devices manufactured using Tower's SiGe and BiCMOS processes include a refractory metal layer substantially coating the liner layer in the contact opening.

184.   Claim 1 of the '167 Patent recites "a metal substantially filling the contact opening." As shown in the exemplary analysis below, devices manufactured using Tower's SiGe and BiCMOS processes include a metal substantially filling the contact opening.



185.    Claim 1 of the '167 Patent recites "an intermix region at an upper surface of the semiconductor substrate in the contact opening, the intermix region having a composition including a material used in the first liner layer, a material used in the refractory metal layer, and a material used in the semiconductor substrate." As shown in the exemplary analysis below, devices manufactured using Tower's SiGe and BiCMOS processes include an intermix region at an upper surface of the semiconductor substrate in the contact opening, the intermix region having a composition including a material used in the liner layer, a material used in the refractory metal layer, and a material used in the semiconductor substrate.





186.    Claim 1 of the '167 Patent recites "wherein the refractory metal layer includes a multi-layer having at least a first refractory metal material and a second refractory metal material, the first refractory metal material substantially separating the first liner layer and the second refractory metal material, the second refractory metal material substantially separating the first refractory metal material and the metal." As shown in the exemplary analysis immediately above, the refractory metal layer in devices manufactured using Tower's SiGe and BiCMOS processes includes a multi-layer having at least two refractory metal materials, one refractory metal material substantially separating the liner layer and the other refractory metal material, the other refractory metal material substantially separating the one refractory metal material and the metal.

187.    Defendants have knowledge of the '167 Patent, and their infringement thereof, through at least the filing and service of this complaint. Defendants' infringement is willful, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284.

188.    Defendants, in violation of 35 U.S.C. § 271(b), have also indirectly infringed and are indirectly infringing at least claim 1 of the '167 Patent by inducing third parties to sell, promote, offer to sell, make, use, and/or import the '167 Accused Products in the United States, and particularly in Texas. Through distribution and/or sales agreements with third-party distributors and customers, Tower is doing so with actual or constructive knowledge of the '167 Patent, knows or should know that the acts of the third-party customers and/or distributors will result in infringement of the '167 Patent, and has specific and actual intent to cause the third-party customers and/or distributors to infringe the '167 Patent.

189.    On information and belief, Defendants, in violation of 35 U.S.C. § 271(b), actively instruct, encourage, and/or aid such infringement through various acts, including instructing and training its distributors and customers to use one or more of the '167 Accused Products in a manner covered by at least claim 1 of the '167 Patent.

190.    As merely one example, on information and belief, Tower sells semiconductor devices using its 65nm RF processes to customers, including Qorvo, for importation into the U.S. For example, "[t]he end-product of [Tower's] process is a silicon wafer containing multiple identical ICs. In most cases, [Tower's] customers assume responsibility for dicing, assembling, packaging and testing." https://towersemi.com/about/corporate-social-responsibility-esg/corporate-sustainability-report/.

191.    On information and belief, Defendants have been, and currently are, contributorily infringing the '167 Patent, in violation of 35 U.S.C. § 271(c), by selling/leasing or offering to

sell/lease, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the '167 Patent, are known by Defendants to be especially made or especially adapted for use in infringement of the '167 Patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the '167 Accused Products. Defendants' actions contribute to the direct infringement of the '167 Patent by others, including customers of the Accused Products, in violation of 35 U.S.C. § 271(c).

192. GlobalFoundries has suffered and continues to suffer damages as a result of Defendants' infringement of the '167 Patent.

193. Defendants' continuing acts of infringement are a basis of consumer demand for the '167 Accused Products. Defendants' continuing acts of infringement are therefore irreparably harming and causing damage to GlobalFoundries, for which GlobalFoundries has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendants' continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by GlobalFoundries should an injunction not issue. The public interest would be served by issuance of an injunction.

## JURY DEMAND

194. GlobalFoundries demands a jury trial as to all issues that are triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, GlobalFoundries respectfully prays for relief as follows:

A. Judgment that Defendants are liable for direct infringement, and/or inducing the infringement, and/or contributing to the infringement of one or more claims of the Asserted Patents;

B.      An Order preliminarily and permanently enjoining Defendants and their respective officers, agents, employees, and those in privity or in active concert or participation with them, from further infringement of the Asserted Patents;

C.      Compensatory damages, including past and future damages, in an amount according to proof, including lost profits, and in any event no less than a reasonable royalty;

D.      Increased damages under 35 U.S.C. § 284;

E.      Pre-judgment interest;

F.      Post-judgment interest;

G.      Attorneys' fees and costs based on this being an exceptional case pursuant to 35 U.S.C. § 285, including pre-judgment interest on such fees and costs;

H.      An accounting and/or supplemental damages for all damages incurred by Plaintiff from six years prior to the date this lawsuit was filed through entry of a final, non-appealable judgment;

I.      If this Court declines to enjoin Defendants from infringing the Asserted Patents, damages for future infringement in lieu of an injunction; and

J.      Any further relief that the Court deems just and proper.

DATED: March 26, 2026

Respectfully submitted,

*/s/ Nathaniel St. Clair, II*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

Clement Naples (*pro hac forthcoming*)
cnaples@cgsh.com
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Fax: (212) 225-3999

Gregory K. Sobolski (*pro hac forthcoming*)
Thomas W. Yeh (*pro hac forthcoming*)
gsobolski@cgsh.com
tyeh@cgsh.com
650 California St., Suite 2400
San Francisco, California 94108
Telephone: (415) 796-4400
Fax: (415) 796-4499

Bert C. Reiser (*pro hac forthcoming*)
Sami Al-Marzoog (*pro hac forthcoming*)
Daniel Todd (*pro hac forthcoming*)
breiser@cgsh.com
salmarzoog@cgsh.com
dtodd@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500
Fax: (202) 974-1999

S. Giri Pathmanaban (SBN 24074865)
gpathmanaban@cgsh.com
1841 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 815-4100
Fax: (650) 815-4199

**JACKSON WALKER LLP**

Nathaniel St. Clair, II
Texas State Bar No. 24071564
nstclair@jw.com
2323 Ross Avenue, Ste. 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

Arthur Gollwitzer III
Texas Bar No. 24073336
agollwitzer@jw.com
Paige V. Welch
Texas State Bar No. 24138184
pwelch@jw.com
100 Congress Avenue, Suite 1100
Austin, TX 78701
Telephone: (512) 236-2204
Fax: (512) 236-2001

**ATTORNEYS FOR PLAINTIFF
GLOBALFOUNDRIES U.S. INC.**